# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 31, 2013

No. 12-60522
Summary Calendar

Lyle W. Cayce
Clerk

STUART DENMAN, Individually; JULIA DENMAN, Individually; and
DENMAN FARMS, LLC,

Plaintiffs-Appellants,

v.

TALLAHATCHIE DUCKS, LLC; and MARK MCILWAIN, Individually,

Defendants-Appellees.

Appeal from the United States District Court,
Northern District of Mississippi, Delta Division
U.S.D.C. No. 210-cv-00133

Before STEWART, Chief Judge, and KING and CLEMENT, Circuit Judges.
PER CURIAM:[*]

Defendants-Appellees, Dr. Mark McIlwain and Tallahatchie Ducks, LLC,
entered into a 10-year hunting lease agreement with Plaintiffs-Appellants, Dr.
Stuart Denman, Julia Denman, and Denman Farms, LLC. The lease agreement
also contained provisions regarding a hunting lodge that was to be built on the
land during the lease period. Prior to the expiration of the lease, the hunting

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-60522

lodge was built and subsequently burned down. Dr. McIlwain collected the fire insurance proceeds. Plaintiffs-Appellants filed suit for breach of contract demanding, *inter alia*, specific performance and/or actual and punitive damages. Holding that the lease should be construed as written, the district court rendered judgment in favor of Defendants-Appellees. For the reasons stated herein, we affirm.

## I.

In the summer of 2007, Alabama resident, Dr. Mark McIlwain entered into a "Lease of Duck & Deer Hunting Rights Agreement" with Mississippi resident, Dr. Stuart Denman. The lessee, Dr. McIlwain, entered into the lease through Tallahatchie Ducks, LLC. The lessor, Dr. Denman, entered into the lease through Denman Farms, LLC. Both parties were represented by counsel. There were several exchanges and preliminary negotiations before the final terms of the lease were agreed upon by both parties.

The land subject to the lease was approximately 2,000 acres located in Tallahatchie County, Mississippi and owned by Denman Farms, LLC. The lease period was for a term of 10 years, from August 2007 through August 2017.[1] The lease provided that Dr. McIlwain would pay $65,000 per year[2] during the term of the lease for deer and duck hunting rights on the land. The lease also provided that Dr. McIlwain intended to build a hunting lodge on the land. Additionally, the lease contained provisions for liability insurance and fire and extended risk insurance.

The lease provided the following language in pertinent part:

> 3.     Renter intends to construct a hunting lodge on the premises at his expense. Upon the expiration

---

[1] The lease contained an option to renew for two additional 5-year terms at the expiration of the initial 10-year lease period.

[2] Dr. Denman agreed to a reduction of the lease price for the year 2008 only.

2

No. 12-60522

of the primary ten (10) year term, the hunting lodge shall become the property of the Owner.

4.  Renter shall maintain insurance on the hunting lodge against fire and extended risks on a replacement cost basis. Renter is responsible to insure its contents. For purposes herein, "replacement cost basis" shall mean the actual replacement cost of the hunting lodge from time to time. The cost of insurance will be paid by the renter during the primary ten (10) year term. Owner shall be responsible to maintain, at his expense, said insurance during any renewal of this lease. The responsible party shall furnish the other party with proof of insurance. Further, Renter shall pay property taxes on the hunting lodge, utilities and all maintenance of the hunting lodge during the primary ten (10) year term.

. . .

8.  Renter must maintain liability insurance and list Owner as an additional insured.

Dr. McIlwain completed construction of the hunting lodge on the leased property in late 2007. The total cost of construction was just under $500,000. To finance the construction of the lodge, First Metro Bank extended a loan on Dr. McIlwain's line of credit for the approximate amount of $400,000 which Dr. McIlwain subsequently loaned to Tallahatchie Ducks, LLC. Additionally, Dr. McIlwain made personal loans to the LLC totaling the approximate amount of $275,000. The money loaned to the LLC by Dr. McIlwain was used in part toward the construction and maintenance of the lodge and in part toward the operation and maintenance of the LLC. Dr. McIlwain also obtained a fire and extended risk insurance policy with StarNet Insurance Company to insure the lodge and its contents.

3

No. 12-60522

The lodge burned down on February 7, 2010 and the fire was deemed an accident. Dr. McIlwain reported the burning of the lodge to his insurance company and ultimately collected $438,000 in insurance proceeds to cover the loss. Dr. McIlwain used the insurance proceeds to repay himself for the loans he made to the LLC.

In May 2010, after an in-person visit from Dr. McIlwain regarding his unwillingness to continue the lease in its then-current form, Dr. Denman inquired via written letter as to Dr. McIlwain's plans to replace the lodge. Dr. McIlwain responded via written letter and informed Dr. Denman that the "[i]nsurance proceeds were used to pay off debt associated with construction" of the lodge and that it was not "financially feasible to rebuild the lodge after the fire loss occurred." Additionally, Dr. McIlwain again stated that Tallahatchie Ducks was not in a "financial position to continue the present lease." Dr. McIlwain went on to state that he would consider the lease terminated by June 7, 2010 unless he heard otherwise from Dr. Denman. The lease was subsequently terminated.

In July 2010, Plaintiffs-Appellants filed suit against Defendants-Appellees for breach of contract, asserting, *inter alia*, allegations of negligence, unjust enrichment, conversion, and conspiracy. Plaintiffs-Appellants prayer for relief included specific performance via replacement of the lodge and/or actual and punitive damages. As stated, the trial judge ruled against Plaintiffs-Appellants, providing the following reasoning: (1) both parties were educated, experienced, and represented by attorneys who negotiated the terms of the lease before agreeing on the final version; (2) Defendants were responsible under the lease for the majority of the costs associated with the lodge until the expiration of the 10-year lease term; (3) the lease mandated that Plaintiffs be named as additional insureds on the liability insurance policy but not on the fire and extended risk insurance policy; (4) the lease does not provide that Plaintiffs have any

4

ownership interest in the lodge (or in any of Defendants' real property or fixtures located on the land subject to the lease agreement) prior to the expiration of the 10-year lease term or Defendants' default on the lease; and (5) the lease does not provide that Defendants must rebuild the lodge if it burns down or that Plaintiffs are entitled to any of the fire and extended risk insurance proceeds if it does.  In light of this analysis, the district court concluded that the lease must be "enforced as written" and ruled in favor of Defendants, thereby denying Plaintiffs any compensatory or equitable relief.  Plaintiffs filed the instant appeal.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Preston Exploration Co., L.P. v. GSF, LLC*, 669 F.3d 518, 522 (5th Cir. 2012) (quoting *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000)). Where federal jurisdiction is based on diversity of citizenship, a federal court looks to the substantive law of the forum state.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011)(citations omitted).  The parties do not dispute that Mississippi law applies in these proceedings.

## III.

After considering the parties' arguments as briefed on appeal, and after reviewing the record, the plain, unambiguous language of the "Lease of Duck & Deer Hunting Rights Agreement" at issue, the applicable statutory, state and federal case law, the district court's well-reasoned interpretation of the lease, and its judgment and reasoning, we AFFIRM the district court's judgment and adopt its analysis in full.